UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TESKA MOREAU ET AL.                    CIVIL ACTION


VERSUS                                 NO. 12-2027


SHELL OIL COMPANY                      SECTION "H"


## ORDER AND REASONS

Before the Court is Defendants Shell Exploration and Production Company and Shell Offshore, Inc.'s (collectively "Shell") Motion for Summary Judgment (R. Doc. 47).  For the following reasons, the Motion is GRANTED and, the claims against Shell are DISMISSED WITH PREJUDICE.


## BACKGROUND

Plaintiff Teska Moreau alleges that he sustained a back injury during a Helicopter Underwater Escape Training (HUET) course.[1]  At the time of the accident, Plaintiff was a seaman employed by Defendant Galliano Marine

---

[1] Moreau's wife and children also bring claims for loss of consortium in this action.

1

Service, LLC ("Galliano").  The training exercise was conducted by Defendant Petrofac Training Inc. ("Petrofac") on Defendant Shell's property.  Plaintiff was required to complete this training every four years in order to be transported to and from his worksite by helicopter.  The course was designed to train employees how to escape from a helicopter submerged in water, and it took place in a swimming pool at the Shell Robert Training and Conference Center in Robert, Louisiana.

Plaintiff alleges that he was injured while participating in the HUET course when the operator, a Petrofac employee, controlling the descent of the helicopter simulator into the pool allegedly submerged the simulator suddenly and without warning.  Plaintiff alleges that the operator skipped a step of the training exercise and prematurely submerged the helicopter in violation of protocol.  Plaintiff states that he panicked and sustained injuries while trying to escape the simulator.

Plaintiff contends that Shell is liable for the negligent acts of Petrofac and/or the Petrofac instructor because they were agents or employees of Shell. In this Motion, Shell moves for summary judgment on the claims against it.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law."[2]   A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[4]  "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[5]   Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[6]   "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[7]   "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[8]

---

[2] Fed. R. Civ. P. 56(c) (2012).

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[4] *Coleman*, 113 F.3d at 533.

[5] *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[7] *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

[8] *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[9]

## LAW AND ANALYSIS

Plaintiffs' Complaint reasonably presents three theories under which Shell could be liable for Moreau's injuries: (1) for its own negligence; (2) vicariously for the negligence of Petrofac; and (3) vicariously for the negligence of Petrofac's employees. This Court will address each of these theories in turn.

### A. Shell's Negligence

In its Motion, Shell argues that it owed no duty to Plaintiffs and thus is not liable for its own negligence.  Plaintiffs' opposition failed to address this argument or identify any negligent act for which Shell should be held independently liable.  Accordingly,  Plaintiffs have not carried their burden to establish that Shell owed them a duty that was breached, and Plaintiffs' claims for the independent negligence of Shell are dismissed.[10]

### B. Shell's Liability for the Negligence of Petrofac

#### I. Master/Servant Relationship

Plaintiffs next allege that Shell is liable for the negligence of Petrofac because Petrofac is Shell's agent.  The primary issue in this case is whether Petrofac is an agent of Shell or merely an independent contractor.  According to

---

[9] *Boudreaux v. Banctec, Inc.*, 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

[10] *See Holmes v. Shell Offshore Inc.*, No.12-1890, 2014 WL 2898461, at *8 (E.D. La. June 26, 2014) (holding that Shell owed no duty to warn of dangers of HUET training when Petrofac had control over training).

Louisiana Civil Code article 2320, "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." However, "a principal is not liable for the offenses an independent contractor commits while in the course of performing its contractual duties."[11]   Accordingly, Shell is only vicariously liable for the alleged negligence of Petrofac if a master/servant relationship existed between the entities.  Shell contends that it is not liable for the negligence of Petrofac because Petrofac is an independent contractor.

Under Louisiana law,

The factors used to determine the existence of an independent contractor relationship are: (1) a valid contract between the parties; (2) the work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it; (3) the contract calls for specific piecework as a unit to be done according to the contractor's own methods, without being subject to the control and direction of the principal, except as to result; (4) there is a specific price for the overall undertaking; and (5) the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach. *Tower Credit, Inc. v. Carpenter*, 01–2875 (La.9/4/02), 825 So.2d 1125, 1129; *Hulbert v. Democratic State Central Committee of Louisiana*, 10–1910 (La.App. 1 Cir. 6/10/11), 68 So.3d 667, 670, *writ denied*, 11–1520 (La.10/7/11), 71 So.3d 316. The primary focus in determining whether a relationship is a principal-independent contractor relationship or an employer-employee relationship is the right to exercise control over the work.[12]

---

[11] *Perrit v. Bernhard Mech. Contractors, Inc.*, 669 So. 2d 599, 600 (La. App. 1 Cir. 1996).

[12] *Smith v. Northshore Reg'l Med. Ctr., Inc.*, 2014-0628, at *5 (La. App. 1 Cir. Jan. 26, 2015).

"In applying this test it is not the supervision and control which is actually exercised which is significant, the important question is whether, from the nature of the relationship, the right to do so exists."[13]

Shell points to the contractual agreement between it and Petrofac to support its argument that Petrofac is an independent contractor.  The contract between the entities explicitly states that Petrofac shall conduct all operations in its own name as an independent contractor and "not in the name of, or as an agent for" Shell.  It further states that neither Petrofac nor its employees shall be deemed to be agents of Shell for any purpose and that Shell expressly reserves "no right to supervise or control the details of the Work provided by" Petrofac, including its operations, employees, or subcontractors.  The contract makes it Petrofac's responsibility to hire staff and handle the operation, maintenance, and security of the HUET helicopter simulator.  The contract states that "any provision in the Contract which may appear to give [Shell] the right to direct [Petrofac] as to details of performing the Work covered by this Contract, or to exercise a measure of control over the Work shall be deemed to mean that [Petrofac] shall follow the desires of [Shell] in the results only of the Work covered by the Contract."  The contract also provides an expiration date and a pay schedule.

Plaintiffs point to the following facts to support a master/servant relationship: Shell required HUET training of all of its employees and the employees of any company with which it did business;  Shell owns the facility

---

[13] *Iteld v. Four Corners Const., L.P.*, 157 So. 3d 702, 721 (La. App. 4 Cir. 2013).

and the helicopter simulator used by Petrofac in its training exercises; Shell had a training agreement with Galliano, Plaintiff's employer, in which it agreed to provide training courses, like the HUET, to Galliano's employees; the contract between Shell and Petrofac required Petrofac to meet Shell's safety standards; Shell reserved the right to conduct audits of HUET training in conjunction with Petrofac; Shell placed its name or trademark on various documents used in HUET training; Shell made money off of each participant in the HUET training; and a Shell employee may have been present at the time of the incident at issue in this case.

Even assuming that each of these facts is true, none establish the requisite control necessary to create a master/servant relationship.   In *Smith v. Northshore Regional Medical Center*, the Louisiana First Circuit Court of Appeal affirmed the lower court's decision to dismiss the defendant hospital from the suit because there was no master/servant relationship between it and the defendant cleaning company.[14]  The court noted that employees of the cleaning company were required to comply with the rules of the hospital and that the cleaning company was required to meet certain performance standards, engage in quarterly performance reviews, and adhere to a specific maintenance schedule.[15]  The two entities also regularly interacted at the supervisory level regarding maintenance issues.[16]  Despite these facts, the court held that the cleaning company was an independent contractor because it maintained control

[14] *Smith*, at *5–6.

[15] *Id.*

[16] *Id.*

over its employees and the methods by which it performed the work.[17]

Plaintiffs have not submitted any evidence to dispute Shell's assertion that Petrofac controls its employees, as well as the content and implementation of the HUET training course.[18]  The fact that a principal may require its contractor's work to be done within a certain standard and that it may continue supervision over the work to see that it complies with that standard, does not create a master/servant relationship.[19]  Plaintiffs specifically argue that Shell exerted control over Petrofac when it requested that Petrofac add a specific element to the training course. However, even Plaintiffs' memorandum indicates that Shell was interested only in the result, not the manner of the work, when its representative said, "This is what we want to do. Go risk-assess doing that." The contract between the parties unambiguously sought to establish an independent contractor relationship, and the contract meets each of the elements required by

---

[17] *Id.*

[18] *See id.* (granting summary judgment to hospital because maintenance company controlled employees and manner in which floors were cleaned).

[19] *See, e.g., Sasser v. Wintz*, 102 So. 3d 842, 848 (La. App. 1 Cir. 2012) ("While the principal has the ability to oversee the results of the contractor's work, the principal in no way influences the manner in which the contractor does the work."); *Nippa v. Chevron, USA*, 774 So. 2d 310, 314 (La. App. 4 Cir. 2000) ("A principal is entitled to maintain supervisory control over a project done by an independent contractor in order to insure compliance with the contract terms."); *Crysel v. Gifford-Hill & Co.*, 158 So. 264, 268 (La. App. 2 Cir. 1935) ("One contracting to do certain work according to plans and specifications prepared by the contractee, but who exercises full control as to the method of doing the work, save that it must be up to a certain standard, is an 'independent contractor,' for whose actions the contractee is not liable, though he exercises some supervision over the work to see that it is done according to contract.").

Louisiana law to identify an independent contractor relationship.  Plaintiffs have presented no evidence to rebut this.  Accordingly, this Court holds that Petrofac is an independent contractor of Shell.

There are two exceptions to the rule that a principal is not liable for the acts of its independent contractor.

> First, the principal may not avoid liability for injuries resulting from an ultra-hazardous activity by hiring out the work to an independent contractor. The second exception arises when the principal reserves the right to supervise or control the work of the independent contractor or gives express or implied authorization to an unsafe practice.[20]

Plaintiffs have not argued the application of either of these exceptions, nor does this Court find that the record supports them.

## II. Business Enterprise Theory

Plaintiffs next argue that Shell and Petrofac were a business enterprise working toward a shared goal, and as such, Shell is liable under for the negligence of Petrofac.[21]  The single business enterprise theory is a doctrine that imposes liability where two or more business entities act as one for a common purpose.[22]  The cases that Plaintiffs cite in support of this theory, however, discuss the dual employment doctrine.  This line of cases applies when "[a]n employer . . . [lends] an employee to another employer to serve the purposes and

---

[20] *Thompson v. Winn-Dixie Montgomery, Inc.*, 158 So. 3d 41, 45 (La. App. 3 Cir. 2014).

[21] *See Tillman v. Johnson*, No. 95-1490, 1998 WL 779843, at *4 (E.D. La. Nov. 4, 1998) ("Enterprise liability for the actions of an employee requires consideration of the activities that the employer is involved in. If the activities that both employers are involved in encompass the tortious activities of the employee, then both employers may be held liable.").

[22] *Brown v. ANA Ins. Grp.*, 994 So. 2d 1265, 1266 (La. 2008).

needs of the borrowing employer."[23]   In those circumstances, "[t]he lending or general employer remains responsible for the torts of the borrowed employee even though he is in the service of the borrowing of special employer."[24] This line of cases is inapplicable to the case at hand because Plaintiffs allege no facts asserting that Petrofac lent an employee to Shell.  Accordingly, this Court holds that Petrofac is an independent contractor of Shell, and Shell is therefore not liable for Petrofac's negligent acts.

## C. Shell's Liability for the Negligence of Petrofac's Employees

By the same logic discussed above, it is clear that Shell cannot be held liable for the acts of Petrofac's employees. Plaintiffs have submitted no evidence the Shell exerted any control over Petrofac's employees, and Petrofac has admitted that it is responsible for the hiring, firing, training, paying, and supervising of its employees.  Accordingly, Shell is not liable, as a matter of law, for the negligent acts of its independent contractor's employees, and these claims against it are dismissed.

Because Shell cannot be liable for Teska Moreau's injury as a matter of law, all claims against it are dismissed, including those brought by his wife and on behalf of his children.

---

[23] 12 WILLIAM CRAWFORD, LOUISIANA CIVIL LAW TREATISE, § 9:9 (2d ed.).

[24] *Id.*

## CONCLUSION

For the foregoing reasons, this Motion is GRANTED. Plaintiffs' claims against Shell Exploration and Production Company and Shell Offshore, Inc. are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 4th day of June, 2015.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

11